IN THE SUPERIOR COURT OF LEE COUNTY

STATE OF GEORGIA

COPY

| | |
|---|---|
| HERMAN HOUGHTON,<br>          Plaintiff | : CIVIL HEARING |
| | : |
| Vs. | |
| | : CIVIL ACTION #96-V-154 |
| JESSE C. MAYS,<br>          Defendant | : |

November 22, 2004

PRESIDING:

HON. L.A. McCONNELL, JR.
HOUSTON COUNTY SUPERIOR COURT
PERRY, GEORGIA

APPEARANCES:

For the Plaintiff:

W. EDWARD MEEKS, JR.
ATTORNEY AT LAW
P.O. BOX 720
LEESBURG, GA 31763

For the Defendant:

WALTER HAMBERG III & PAUL DAVID MENAIR
ATTORNEY'S AT LAW
4500 SUN TRUST PLAZA
303 PEACHTREE STREET, N.E.
ATLANTA, GA 30308

Date Filed *Dec. 27, 2004*
Hour Filed *2:30 P.m*
By *Lisa K. Ivey*
CLERK SUPERIOR COURT
LEE COUNTY, GEORGIA

Court Reporter:    Betty Douglas
                   Court Reporter, B-2389
                   201 Gilbert Road
                   Elko, GA 31025
                   (478) 987-5381

05 2116

FILED

OCT 2 8 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

```
 1                    P R O C E E D I N G S
 2   November 22, 2004
 3            MR. HAMBURG:   We are the moving party, but
 4   Eddie has raised an issue of a technicality in the
 5   file. As the Court knows, there are several
 6   different matters here.  There was the original 1996
 7   petition to probate the will which was appealed de
 8   novo to the Superior Court.  And that uh, and then in
 9   2002 Mr. Houghton and Mr. Harper filed a Quiet Title
10   Action, that's a separate matter.
11            Mr. Meeks has gotten the '96 file from the Lee
12   County Court and this file contains an order in this
13   matter entered in October of 2003 which appears to be
14   signed by Judge Rucker Smith denying the motion that
15   we are purportedly here to argue today.
16            MR. MEEKS:     Judge may I make a statement
17   here.  This Court was assigned a Petition to Quiet
18   Title Action, which is Civil Action CV Number
19   2002-CV-412.  And the reason for that is, is that
20   John Harper, who is now a Superior Court Judge in Lee
21   County is a party to that action, he and Herman
22   Houghton.  The '96 file was an original action where
23   Mr. Harper represented Mr. Houghton regarding a
24   caveat to a will.  It began in the Probate Court of
25   Lee County where everybody concurred to appeal it to
```

1    the Superior Court.  There was a jury trial in that

2    case in front of Rucker Smith in which a directed

3    verdict was entered in favor of my client, Mr.

4    Houghton.  That case has got the history where - -

5    that case Judge they - - October 30th of '97 the

6    directed verdict was entered.  They filed a Motion

7    for New Trial.  They had - - there were six different

8    lawyers that entered appearances during the '96 file

9    on behalf of the Mays, represented by Mr. Hamberg.

10    But ultimately, they filed an appeal which was

11    denied by the Supreme Court on May 29th of '98.  They

12    then filed a Motion to Set Aside in that '96 CV file.

13    Now, that Motion to Set Aside was supplemented, but

14    Judge Rucker Smith, who was the original Judge in the

15    '96 action in October of last year denied the Motion

16    to Set Aside.

17    It's my position that this Court is strictly

18    here on a Petition to Quiet Title Action, in which

19    the Statue requires that once we file a petition that

20    a Special Master is appointed, who would be a lawyer

21    in the Southwestern circuit, to make a recommendation

22    to the Court regarding title.

23    The '96 Action, uh, Mr. Hamberg and them have

24    filed - - they're filing Motion to Set Aside that

25    judgement, which is, as I have said a Motion to New Trial

3

1    has been denied, the appeal has been affirmed, and

2    now we see that the Motion to Set Aside by order of

3    Rucker Smith in October of '03 was denied.  I don't -

4    - it's my opinion that that motion is not before this

5    Court because this Court is then assigned as I

6    understand the 2002 Petition to Quiet Title Action

7    because Judge Harper is a party to it.  And I think

8    the rules require that if a sitting judge is a party

9    to an action, obviously the Judges in that circuit

10    recuse themselves and the court administrator

11    appoints someone else.

12        The '96 action, you know, Judge Harper simply

13    was the lawyer just like I was representing Mr.

14    Houghton.  He was not a party, never has been a

15    party.  And that case, as I can tell from the clerks

16    file, has been addressed, all the motions have been

17    resolved and I don't see anything under Georgia law

18    that would say that order, that judgement that

19    was originally entered back in 1997 is not good law.

20        THE COURT:    I don't - - what's y'all's

21    position on that?

22        MR. HAMBERG:   Our position is, Your Honor, this

23    is, this is the file that - - I understand this is

24    the entire '96 file?

25        MR. MEEKS:    That's the clerk's file from

4

1    Lee County.

2        MR. HAMBERG:    Okay.    We entered - - this is

3    the 1996 Action.    We, our clients, through a prior

4    attorney in 1998 or '99 had filed a Motion to Set

5    Aside that judgement in the '96 action.    After we

6    got involved in 2001 and 2002, in October 27th, 2000,

7    I have time stamped copies here, we filed an

8    addendum to the Motion to Set Aside.    And, there were

9    several other subsequent addendums in that '96

10   action.    One on November 14th, 2002 and December 15th,

11   2003.    And that was, Your Honor may recall, was prior

12   to this Courts conference and hearing on this '96

13   matter last December.    Now this Court file does not

14   contain any of the three pleadings we filled in 2001

15   and 2002, in this file, and I've cross referenced the

16   numbers.

17       There is an order in here signed by Judge

18   Rucker Smith, just about a month and a half before

19   our conference last year.    You recall we were down

20   here, Eddie Meeks and I, that does purport to deny

21   that motion.    So I think we have a procedural

22   irregularity.    Now, the 2002 action is the Quiet

23   Title Action that we discussed last December as not

24   being relevant if in fact the Motion to Set Aside

25   is granted.    Once the Motion to Set Aside, if it is

5

1   denied, then there would be a Quiet Title Action to

2   determine ownership under the deed.

3       Your Honor indicated an indication last December

4   to stay the Quiet Title Action pending the ruling of

5   the Michigan Court and the Court also decided

6   informally to stay a hearing on this Motion to Set

7   Aside until a ruling of the Michigan Superior Court.

8   So, we've been operating under the assumption that

9   this Court had jurisdiction over the 1996 matter,

10   the Motion to Set Aside that judgement, which is

11   filed under the same matter number as the '96 matter

12   in which we have filed all of our pleadings,

13   including three or four addendums.

14       MR. MEEKS:   Well Judge, the clerk's file

15   and I don't what - - how Mr. Houghton or I mean Mr.

16   Hamberg referenced that to Civil Action, but the

17   supplemental brief he filed in December of '03, the

18   Order entered by Judge Smith was in October of '03.

19   And, there is - - I don't understand under any

20   principle, why this court would be dealing with the

21   '96 action.   That was addressed by Judge Rucker

22   Smith, the trial judge and, if they feel like

23   there's any irregularities in that file, then that

24   certainly can be addressed in front of Judge Smith.

25   He still has that file, he's entered orders.   This

6

1      2002 file is the Petition to Quiet Title Action that

2      we brought before this Court, and as I understand

3      from talking to the Court Administrator, that's what

4      the Court has been assigned to hear is the Petition

5      to Quiet Title.  And, that is based upon a judgement

6      that's been entered in the '96 action whereby the

7      Court found, the Appellate Courts have found of

8      Georgia that Mrs. Mays, Mr. Houghton's wife, died

9      intestate.  And that order has been entered, and the

10     law was pretty clear.  I mean, I've got a wealth of

11     case law that says once an order or judgement has

12     been affirmed on appeal, you can't attack it by a

13     Motion to Set Aside, that becomes the law of the

14     case.  That the remedy was to go through with the

15     appeal, they lost the appeal.  You can't come back

16     and attack an appeal by a Motion to Set Aside, and

17     I've got case law on that and what I'm here to ask

18     this Court to do - - Judge, this Petition to Quiet

19     Title Action was filed back in '02, it's been pending

20     for almost two and a half years and I'm asking the

21     Court today to let's appoint a Special Master and

22     move this file along an make some progress.  If

23     they've got issues on the '96 file, then they need to

24     address that with Judge Smith because that's the

25     trial judge that anything else they think they can

1    address needs to be addressed.  I don't see that

2    there is, but I think this Court - - we're in a

3    situation under the Statue regarding a special - -

4    regarding a Petition to Quiet Title and I'm asking

5    this Court, let's move forward and appoint a Special

6    Master, because - -

7         THE COURT:    Well, I'm not going to do that

8    until that gets resolved with Judge Smith down there.

9    Because I was under the impression too, that by

10   agreement or otherwise that this other was going to

11   be all thrown into the mix.  I may have mis-

12   understood.  It might have been my fault, I'll accept

13   responsibility for that.  But, you're right, what was

14   assigned was the Petition to Quiet Title.  But, uh,

15   if his pleading were not there, I don't know, did

16   y'all have a hearing with Judge Smith?

17        MR. HAMBERG:   No, Your Honor, well, we came

18   into this matter afterwards.  But there was no

19   hearing with Judge Smith that we've ever been

20   involved in and we've been in this case since 1999

21   in one form or another.

22        MR. MEEKS:    Well, Judge, let me make this

23   point for the record.  There were four or five

24   lawyers that weighed in and would withdraw on behalf

25   of the Mays.  There were, I think Mr. Hamberg was

1    the sixth lawyer.  But, my point is, is that,

2    according to - - under the Uniform Rule, if nobody

3    requests a hearing, obviously the Court can enter an

4    order without a hearing and that's what happened.

5    But, uh - -

6        THE COURT:    Well, you may want to depose

7    Judge Smith.  I don't know what else to do.

8        MR. HAMBERG:    Your Honor, I might add

9    additional - -

10       THE COURT:    Cause It looks like there's an

11   irregularity based on what you've said somewhere.

12       MR. HAMBERG:    This order, and I just want to

13   make a record on this.  I was looking at the file

14   that Mr. Meeks brought and we have a copy of Judge

15   Smiths order in October, October 20th of 2003, and

16   I'll state to the Court that we have time stamped

17   copies of entries of appearance through filing and

18   pleadings for two years before that.  I will also

19   say that this order signed by the Judge was never

20   served on us.

21       MR. MEEKS:    Well, where is your, where is

22   your time stamped pleadings?  What civil action

23   number to do you reference?

24       MR. HAMBERG:    We reference 96 CV or 96 V-154.

25   It's the same matter.  Here is my pleadings.  Here is

9

1    my work copies with time stamp of the Lee County

2    Superior Court.  And, of course Your Honor, when

3    this Court was involved, Judge McConnell, we

4    immediately began filing other supplemental briefs

5    in this '96-V-154 case and that was the briefing that

6    we had submitted to you and was under discussion in

7    December of last year.  So, we've been operating

8    under the assumption that this Court had jurisdiction

9    over this '96 matter and the Motion to Set Aside

10    was still viable.

11        MR. MEEKS:    I'd like to make a point for the

12    record Judge.  As I understand the rule, and I have

13    this happen constantly.  I mean I had it happen in

14    Fulton County.  Unless you request an oral argument

15    or oral hearing, in the '96 file, Judge Smith has the

16    right to enter his order.  Now whether they should

17    have gotten a copy or didn't get a copy, I don't

18    know.  But, I think Judge Smith operated within the

19    Rule and I don't think there's any - - as I read all

20    these files and all these pleadings, there would be

21    no reason why this Court would be assigned a '96

22    file because there's no conflict.  There's no reason

23    Judge Smith would lose the right to hear the rest

24    of that file because he heard the trial, Motions for

25    New Trial.  He heard the motion, or he was familiar

1     with the Pleadings and the Motion to Set Aside and

2     my point solely is, is that what's before you is the

3     Petition to Quiet Title Action.  If they're going to

4     attack that judgement, then it's my opinion that's

5     got to be heard by Judge Smith.  And I think Judge

6     Smith has already make that call, but, if they want

7     to go back and us re-litigate that, that's fine, but

8     I'd like to at least get another date to get - -

9     let's get that done in front of Judge Smith, let him

10    rule and then let's move forward on the Petition to

11    Quiet Title Action.

12         MR. HAMBERG:   Your Honor, I, I recall that

13    Judge Smith, I could be mistaken, but the

14    understanding was that Judge Smith was recusing

15    himself from all of the - -

16         MR. MEEKS:     That is not correct.

17         MR. HAMBERG:   I don't know what orders were

18    entered, but I do know that when Your Honor became

19    involved in this in the Spring of last year, I think,

20    we immediately began discussing this.  I'll have to

21    look back to the file for correspondence from you,

22    but - -

23         THE COURT:    I don't know.  What was the date

24    that I got assigned this thing?

25         MR. MEEKS:     Judge, it was in 2003.  It was

1     in - - Judge Boswell had it and you were assigned it

2     I think the latter part of '03.

3          MR. HAMBERG:    And Judge Boswell had the case

4     when we were filing the earlier versions of our

5     supplemental briefs, the Motion to Set Aside.  We

6     never heard anything from Judge Boswell that he

7     didn't have jurisdiction over those and we were

8     filing them at that time.  I think that Judge

9     Boswell assumed - -

10         MR. MEEKS:    Judge Boswell - -

11         MR. HAMBERG:    Can I speak?

12         MR. MEEKS:    Well wait a minute.  That's an

13     incorrect statement for the record.  The record is

14     Judge Boswell told us before he ever got into the

15     case that he could not take it because he'd been

16     reelected as a Superior Court Judge and he put it

17     back to the court administrator.  He never made a

18     decision on anything.

19         MR. HAMBERG:    He eventually recused himself,

20     but he had the case assigned to him for a period of

21     time and I think that was the period of time in which

22     we were filing some of these earlier briefs.

23         MR. MEEKS:    And Judge, I can state for the

24     record, that the only file that he was assigned was

25     the Petition to Quiet Title Action, the 2002 Action.

1    The '96 Action has never been assigned to anyone

2    else other than Judge Smith.

3        THE COURT:    Well, under the circumstances

4    though, I can't understand why it wasn't.  But,

5    that's Judge Smith's decision, because Judge Harper

6    went on the bench when?

7        MR. MEEKS:    Judge Harper went on the bench,

8    Your Honor, in 2000,

9        MR. HARPER:    2001.

10        MR. MEEKS:    2001.

11        THE COURT:    Do you gauge everything by the

12    time of your heart attacks?  That's how I can tell

13    when something happened, was that number one or

14    number two.  Was that before or after my surgery.

15        MR. HARPER:    I do.  I have those dates etched

16    in stone.

17        THE COURT:    Me too.  Like I said, I don't

18    see why - - I don't know, I though the whole shooting

19    match came up, which is - - I have no proprietary

20    interest in it, I can assure you.  It would simplify

21    my job considerably if it was just a Petition to

22    Quiet Title.  But, I was under the same impression

23    y'all were that we were going to try to cover every-

24    thing and uh, don't know why, but y'all may want to

25    check back with Judge Smith and see what the status

13

1      is.

2           MR. HAMBERG:    Well, I would also state for the

3      record, that apparently opposing counsel assumed the

4      same thing because this is the first time this issue

5      has been raised with us, today.   This issue to set

6      aside, there was no challenge to your jurisdiction to

7      hear this matter at the December hearing last year.

8           MR. MEEKS:    Wait a minute.   What we had was

9      a status conference and we didn't need to make a

10     record and as I understand we have been - - Judge,

11     this file, this order, as I said the original order

12     was entered in '97.   When they filed the Motion for

13     New Trial, you know what their grounds were for the

14     Motion for New Trial; was that Jesse Mays who was a

15     party to this action, the original action, had

16     breached his fiduciary duty to the other

17     beneficiaries under the will, who were also main

18     parties.   That was their basis to say, give us a new

19     trial because we acted pro se and he breached his

20     fiduciary duty to us.   The evidence is going to show

21     you that they wrote the will for Mrs. Mays.   Robert

22     Mays, who was a party to this action, wrote the will.

23     They had the will and they submitted it to Lee County

24     Court for probate.   They knew about the Michigan

25     action, they decided not to go up there.   They stayed

                               14

1    in Lee County.   When they lost it, they claimed that

2    Jesse Mays breached the fiduciary duty.   Now, Mr.

3    Hamberg, about the sixth lawyer down, is now trying

4    to claim Mr. Houghton breached his fiduciary duty.

5    And, my point is, is that what's happened is, they

6    filed an appeal in this case and I think Judge as a

7    matter of law, there is a principal of law called the

8    Law of the Case.   Once you file an appeal, that

9    appeal is affirmed, then that freezes everything.

10   That makes whatever is the law, I mean whatever the

11   facts and the circumstances, that's the law of the

12   case.   We've got that situation, but on the other

13   hand, you know, they're charged with notice of what's

14   in the clerk's file. Judge Smith, there was no

15   prohibition about him looking at this Court file,

16   those Motions to Set Aside were outstanding before

17   him because they keep filing motions every time

18   they're denied.   That, that order was entered over

19   a year ago and - -

20         MR. HAMBERG:   Your Honor - -

21         MR. MEEKS:    Wait a minute.  All I'm asking

22   the Court to do, if the Court does not want to go

23   ahead and appoint a Special Master today, then I

24   would at least like the court to say let's go back

25   in front of Judge Smith as quick as we possibly can

15

1    and get back before Your Honor and move this file

2    along in whichever direction we can move it.

3         THE COURT:    That's the best think I've

4    heard all day.

5         MR. MEEKS:    Okay. You're not inclined to want

6    to go ahead and appoint a Special Master today?

7         THE COURT:    Not right now.  Y'all brought

8    this up.  I was under the wrong impression too, but

9    I think you're right probably.  But, by the same

10   token they've brought up a couple of interesting

11   points too from their standpoint.  But prior to my

12   ever getting involved in it and maybe something with

13   Judge Smith or what have you.  So, uh, I think we

14   need to sort that out, and quick.

15        MR. MEEKS:    What I will do is, I'll get a

16   hearing scheduled in front of Judge Smith promptly.

17        THE COURT:    Okay, that's fine.

18        MR. HAMBERG:    Judge, I have some other state-

19   ments I'd like to make for the record.

20        THE COURT:    Sure.

21        MR. HAMBERG:    At the trial of this matter, I

22   believe it was Judge Harper was representing, he made

23   it clear on the record that it was their position

24   that the laws of the state of Michigan would

25   determine whether there was an intestacy or the

16

1    validity of the will.  During the pendency of this

2    proceeding, we went to the state of Michigan.  Mr.

3    Mays filed a Petition to Probate this will in

4    Michigan which was caveated by Mr. Hougton.  After

5    hearing, the Court in the state of Michigan - - we

6    have the exemplified pleadings we'd like to file with

7    the Court - - entered a finding declaring that the

8    will was valid and admitting it to probate.

9        Prior to that, the Court had issued an order

10   removing Mr. Houghton as a personal representative

11   of the estate and appointing James Mays.  And, that

12   was after a petition was filed against Mr. Houghton

13   to remove him on the basis of having committed a

14   fraud on the Court.  The call that Mr. Houghton - -

15        MR. MEEKS:    Wait a minute.  Wait a minute.

16   That's incorrect - -

17        MR. HAMBERG:   Your Honor, I have an argument

18   I'd like to make.

19        MR. MEEKS:    Well, I'm gonna, I'm gonna

20   correct the record.

21        MR. HAMBERG:   Mr. Houghton, Mr. Houghton.

22        THE COURT:    Let him go ahead and finish.

23   Let him finish, don't correct him.

24        MR. HAMBERG:   Mr. Houghton never presented the

25   will to the Michigan Probate Court.  He was deposed

17

1   in that case.  He admitted that he knew of the will

2   within a month or two of his petition up there.  He

3   admitted he received a copy of the will back in

4   1996, I believe it was March.  And, he admitted on

5   the record that until he was removed, I think it

6   was in 2002, he never presented the will that he

7   knew about to that Michigan Probate Court.  When they

8   came down here, to this Court, in that 1996 action,

9   and when they had that trial, they presented that

10  intestacy order of the Court in Michigan as prima

11  facie evidence of the intestacy.  But they never let

12  this Court know that they had never presented the

13  will.  That's why he was removed in Michigan.  Now,

14  I don't know where we are procedurally with this,

15  Your Honor, but I think - -

16      MR. MEEKS:      That's not true.  Judge, can I

17  say something for the record now?

18      THE COURT:      I don't know if he's through.

19      MR. HAMBERG:    Well, the point I'm making is,

20  Your Honor, that, that the Michigan Court has

21  decided.  The Michigan Court has decided that this

22  is a valid will that it's admitted to probate.

23  They've already admitted that the intestacy order

24  up there was binding on this Court.  They've argued

25  that in this Court.  That is the order of intestacy

18

1       in Michigan that we had overturned.  That is now

2       res judicata.  They did not appeal that order.  It is

3       now a final order in Michigan.  They didn't even

4       appeal it.  We intend to present that order to this

5       Court in support of the Motion to Set Aside.

6               MR. MEEKS:    All right, Judge, let me correct

7       the record.  The '96 trial came about because of

8       this; Robert Mays, who's a part of this action,

9       wrote the will.  Never gave Mr. Houghton a copy of

10      the will.  Mr. Houghton went to Michigan, represented

11      the Court that there was no will.  He had no will.

12      The deposition testimony from Mr. Houghton is, is

13      that, after letters were issued up there, he found

14      out from James Mays on the phone, that there was - -

15      that they said there was a will.  He asked to have a

16      copy of it.  They didn't send it to him.  Mr. Harper,

17      who was then called by a Michigan lawyer to represent

18      Mr. Houghton, because the Mays decided to file the

19      will in Lee County.  The original was filed in Lee

20      County and they didn't go to Michigan cause they

21      knew to go to Michigan cause the Michigan lawyer

22      calls Mr. Harper.  Mr. Harper then entered an

23      appearance on behalf of Mr. Houghton in Lee County.

24      They agreed to let it go to the Superior Court

25      because they realized no matter which way it was

1    going to happen somebody was going to appeal it.

2    They went to trial.  Three lawyers had been - - made

3    appearance on behalf of the Mays before that.  They

4    decided to represent themselves pro se.  They

5    represented to the Court in their opening statements;

6    stuff has already happened in Michigan, that deals

7    with Michigan, we're here to protect the Lee County

8    property.  They admitted on the record they knew

9    about Michigan and made the choice to file it in Lee

10   County.

11        The reason a directed verdict was entered was

12   because Judge Harper was prepared to prove - -

13   number one at that time, the law was this; that if

14   you left out a spouse, the slightest evidence of

15   undue influence would set aside the will.  That was

16   the Georgia law at that time.  They failed to prove

17   the will.  And, Judge Smith on the record, asked

18   repeatedly did they have any other evidence they

19   wanted to present.  They did not.  Now, when that

20   order was entered, they filed a Motion for New

21   Trial attacking Jesse Mays, who representing them,

22   saying he breached the fiduciary duty to them by not

23   representing them appropriately.  That Motion for

24   New Trial was denied, Your Honor.  They then filed

25   an appeal, which the appeal affirmed the decision of

1    the trial court.  They then filed their Motion to

2    Set Aside, which I think was - - there's no valid

3    legal basis for the Motion to Set Aside after the

4    appeal affirmed the verdict.  And then, what we have

5    now is, is that now they're trying to claim that

6    Mr. Houghton had some responsibility because he heard

7    that there was a will, that he was suppose to take

8    it to Michigan when he didn't have the original in

9    the first place.  It was always in the possession of

10    the Mays.  And, Judge, the Georgia law is pretty

11    clear on that.  The Georgia law is there is a

12    presumptive revocation if you try to probate a copy

13    of a will.

14    They decided to litigate it in Lee County,

15    Georgia.  The order of the Georgia Court has been

16    entered since October of 1997.  The appeal was

17    affirmed in 1998 and Judge that's res judicata.

18    They're talking about a Michigan order and I'm

19    going to point out two things to the Court.  Number

20    One, they haven't domesticated a foreign judgement

21    and our Statute is pretty clear.  You can't

22    domesticate a foreign judgement that's inconsistent

23    with the Georgia judgement.  That's what specifically

24    said in the Statute.  They have not domesticated.

25    They haven't done what's - - they couldn't

1    domesticate it anyway. But that Michigan order is

2    not relevant to this case because the Georgia order

3    has been in affect since 1998.

4        THE COURT:    Yeah, but any order - - and this

5    is why - - like I said I hate doing this on the

6    record because I'm showing you how much I don't know

7    and of course that makes y'all look better. It makes

8    y'all look like ya'll know a lot more than you may

9    know. But, what about uh, if it's like they had

10    said, that uh, everything was contingent on the

11    intestacy of whatever this lady, what's her name?

12        MR. HAMBERG:    Susie Mays.

13        MR. MEEKS:    Susie Mays.

14        THE COURT:    And you've got a valid order up

15    there in Michigan, if it is valid, why wouldn't

16    that be grounds to set aside a judgement here,

17    possibly, at least get it into the Court system?

18        MR. MEEKS:    Judge, the reason that that

19    order is not valid, is number one, the Mays chose to

20    litigate in Lee County. They decided to probate the

21    will. The Mays had the choice. They could have

22    gone to Michigan. They knew about the intestacy

23    proceedings, Judge. They decided to go to Lee

24    County. And I've said this in my brief, the law in

25    Georgia is clear, you can't pick a forum and loose

22

1        and then go to another forum and try to win.

2              MR. HAMBERG:    Like you did in Michigan.

3              MR. MEEKS:      No.  We didn't, we filed an

4        action up there to say it was intestate.  We

5        responded to Lee County, Judge.  We didn't initiate

6        the action in Georgia.  We simply defended the action

7        in Georgia.  And, they lost in - -

8              THE COURT:      I mean I know what you're saying,

9        I understand that.  I ruled that way on many

10        occasions, but - -

11              MR. MEEKS:      They can't come into Lee County

12        and loose and then say, well wait a minute, we want a

13        Michigan order to stand now.  And the whole argument

14        Judge, is that we had some responsibility to go grab

15        the original will out of their hands and run it to

16        Michigan when they came to Lee County and filed it.

17        And these arguments they keep making, Judge, they

18        have attacked each other.  They have claimed that

19        each other breached fiduciary duties.  They have made

20        every argument under the sun and now they're coming

21        in claiming Mr. Houghton had some responsibility to

22        go snatch the original will out of Robert Mays hand

23        who wrote the will himself and they filed it in Lee

24        County as if we've got some responsibility to take

25        it to Michigan.  The responsibility was on them.

                                  23

1     They chose Lee County. They chose Georgia as the

2     forum. They lost in Georgia and now they're trying

3     to claim it's our fault. That's the bottom line.

4     They're trying to claim it's Mr. Houghton's fault

5     that they've lost, so they went to Michigan and

6     got a new order that six years beyond the Georgia

7     order.

8     THE COURT:    I don't know it just seems

9     like they'd have something to argue anyway.

10     MR. HAMBERG:    Your Honor, there is a couple of

11     important points. Under Michigan law, just like

12     under Georgia law, once you're a fiduciary, you have

13     a heightened responsibility. If an executor or an

14     administrator or, which is what Mr. Houghton was

15     under Michigan law, has knowledge of the existence

16     of a will, whether it's valid or not is a matter of

17     law for the Court. I got testimony from Mr. Houghton

18     saying I never presented it to the Michigan Court

19     because I didn't think it was valid. But that's not

20     the point, that's for the Court to decide. He

21     concealed the existence of a purported will as a

22     fiduciary. The will names five people as beneficiary

23     and Jesse Mays as executor. And those five people

24     are the petitioners here. Mr. Houghton is not

25     mentioned in that will. He had a self interest in

1          not presenting that will to the Court.

2               Down here at this jury trial, where the Mays

3          family, very unfortunately, chose to represent

4          themselves.  The trial transcript, which we have a

5          copy of, I think we can make it a part of the record,

6          but it is a heartrending edition of one snafu after

7          the next.  They never presented the will.  And, as a

8          basis for that court order, Judge Rucker Smith cites

9          the records presented from the Michigan Court showing

10         an intestacy as one of the bases for the order

11         of the Lee County Superior Court for the intestacy.

12              THE COURT:     That what I was going to say,

13         this is to me - - that's something y'all are going to

14         have to deal with Judge Smith on.  All it does is

15         confuse me this morning.  But, y'all, and I'm being a

16         little bit facetious there because - - let me point

17         this out to everybody, Mr. Meeks, Mr. Hamberg,

18         everybody at that prior hearing, y'all covered all

19         this territory pretty thoroughly and y'all gave me a

20         lot more information about probate law than I ever

21         thought I would use or need in Michigan and here.

22         So, y'all have done your job.  But, I think you're

23         right, I think this is probably something that needs

24         to be addressed to Judge Smith at this point in time

25         and see what he does with it.  And, then, that may

1    resolve everything and then appoint the Special

2    Master. It may not, I don't know.

3        MR. MEEKS:    Well, Judge, once we get a

4    hearing in front of Judge Smith, then I then get with

5    your office and get a hearing set up as quick as I

6    can and appoint a Special Master.

7        THE COURT:    Sure.

8        MR. MEEKS:    I've got some recommendations.

9        MR. HARPER:    Do you even need a hearing to

10   appoint the Special Master?

11       MR. MEEKS:    John makes a good point.  Do we

12   need a hearing if, if we're at a point to appoint a

13   Special Master, can we simply submit that.  I mean,

14   I think its' got to be a lawyer from the Southwestern

15   circuit.

16       THE COURT:    Yeah, y'all can submit that, but

17   in the meantime y'all can respond to however you

18   wanted to.  But I though once that part was over,

19   then it's sort of the - -

20       MR. MEEKS:    Yeah.  I don't really think there

21   would be need to have a hearing just to appoint the

22   Special Master, that's Statutory.  I think, once he

23   makes his report, would be the necessity for a

24   hearing.

25       THE COURT:    Right.  I think you're probably

26

1    right there.

2            MR. HAMBERG:    We also feel though, that until

3    this issue of the Motion to Set Aside is straightened

4    out and comes to a final conclusion, that the

5    Quiet Title Action is not right yet.

6            THE COURT:    I don't think so either, but

7    by the same token, Judge Smith needs another

8    headache.  He hadn't got enough problems already.

9            MR. MEEKS:    Well, Judge, I will get in

10   front of Judge Smith and get a hearing scheduled

11   immediately.

12           THE COURT:    Okay.  Oh gosh, he's not going

13   to let me use his desk anymore when I go down there.

14   Okay.

15           MR. MEEKS:    Thank you, Your Honor.

16           THE COURT:    Thank you.

17   (Hearing concluded)

18

19

20

21

22

23

24

25

                                27

1

2                              C E R T I F I C A T E

3

4    STATE OF GEORGIA

5    COUNTY OF HOUSTON

6         I, Betty Douglas, Court Reporter, in and for the

7    State of Georgia at large, do hereby CERTIFY that I

8    personally reported said proceedings on November 22, 2004,

9    and that the preceding pages represent a true, correct and

10   complete transcript of the above proceeding.

11        I further CERTIFY that I am not interested in the

12   outcome of said case; nor am I employed on a regular basis

13   by any of said parties; nor am I related to any of said

14   parties.

15        WITNESS my hand as Court Reporter, #B-2389, this

16   28th day of _____November_____, 2004, in the City of

17   Perry, Houston County, Georgia.

18

19

20                                   BETTY DOUGLAS

21                                   CCR #B-2389

22

23

24


                                   28